UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ENGELS SOSA-RODRIGUEZ,

      Petitioner,

    -against-

STEVEN RACETTE, Superintendent,
Great Meadow Correctional Facility,

      Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

12 CV 2209 (RJD)

DEARIE, District Judge.

Petitioner Engels Sosa-Rodriguez, proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the application is denied and the petition is dismissed.

**FACTUAL BACKGROUND**

Following his sale of cocaine to an undercover police officer on a street corner in Brentwood, New York in July 2004, petitioner was charged, by indictment, with two counts each of criminal sale and criminal possession of a controlled substance in the third degree. See Case No. I-1703-2005, County Court, Suffolk County (ECF #14-1 pp. 2-4). In October 2004 petitioner unlawfully entered a home in Holbrook, New York and stole a cordless telephone; for this conduct he was charged, by a superior court information, with burglary in the third degree. Case No. S-2115-05, County Court: Suffolk County (ECF #14-1 p. 12).[1] On December 6, 2005,

---

[1] See generally N.Y. Crim. Proc. L. §§ 195.10 (providing that a defendant "may waive indictment and consent to be prosecuted by superior court information" for certain crimes with the consent of the district attorney) and 195.20 (detailing the written instrument the parties must

at a consolidated plea proceeding where he was represented by counsel, petitioner entered pleas of guilty to the burglary charge and, in satisfaction of the drug charges, to a single count of attempted criminal sale of a controlled substance in the third degree.[2]

In exchange, the court agreed as follows: "The sentence that I'm going to impose is two-and-a-half years determinate on the drug charge, two years post-release supervision, [and] to four years on the [b]urglary, to run concurrent[ly]." The court released petitioner on his own recognizance pending sentence so he could visit his ailing mother, but in so doing gave him an explicit warning, as follows:

| | |
|---|---|
| COURT: | Here's the deal, Mr. Sosa-Rodriguez. I told your attorney that based upon the fact that he has shown proof to the Court that I believe your mother is seriously ill, I am going to let you out for a period of time to see your mother. |
| | Now, listen to me Mr. Sosa-Rodriguez, and listen to me good, Okay? |
| | Number one, if you fail to go for your presentence report or you're not back in court on the date that I give you or have any further involvement with the law, I guarantee it that next time I see you, you are going to get eight years on the drug case and fifteen years on the [b]urglary, not to run concurrent. |
| | Do you understand me? |
| PET'R: | Yes, sir. |
| COURT: | Do you want to take this risk at this point? |
| PET'R: | Yes, sir. |

---

execute to effect the waiver). The state court record furnished to the Court contains the required document, a "Waiver of Indictment and Consent to be Prosecuted by a Superior Court Information," executed by petitioner and the district attorney. ECF #14-1 pp. 10-11.

[2] Petitioner was a repeat felony offender within the meaning of New York CPL §400.21 and was furnished with the required statement of his criminal record. ECF #14-1 p. 13. At the time of his plea he also admitted the contents of that statement.

| | |
|---|---|
| COURT: | You're sure? |
| PET'R: | Yes, sir. |
| COURT: | ... The District Attorney is opposing your release, Mr. Sosa-Rodriguez. I'm just going to give you a little advice when you get out of custody. You know what the words 'lay low' mean? You need to lay low, as low as you can possibly get. |
| PET'R: | I will, Your Honor. (ECF #12 p. 16). |

As it developed, however, petitioner did not heed the court's warnings: he failed to appear for sentencing, which led to a warrant being issued, and he apparently engaged in conduct that led to the lodging of additional charges.[3]

At sentencing on May 16, 2006, petitioner offered the court the following explanation:

> Your Honor, I understand that you gave me a chance. I know I blew it. You know what I'm saying? I appreciate what you did.
>
> But the reason that I couldn't make it to the last time in court, my mother had a problem. My girl, she was pregnant. At that time I didn't know what to do. . . I was nervous. . . . It's up to you, Your Honor. . . And I really apologize for disrespecting you like that, sir.

The court explained:

> I gave you a break. And that was probably my mistake in letting you out in the first place. . . I told you what the penalties were. You agreed to them. And intend to live up to the warnings that I gave you when I let you out originally.
>
> You're a guy that I don't want to see back on the street for a while. I don't think that you're able to live a law[-]abiding life. And I'm going to sentence you. And you'll have to make your way in jail.

---

[3] Both defense counsel and the assistant district attorney refer to new charges in their remarks at sentencing. See ECF #12-1 p. 3 (defense counsel stated that "there are new allegations that obviously we don't know whether or not they're provable or not. Obviously it's a new charge. He's been arrested. I don't believe he has been indicted") and ECF #12-1 p. 6 (the ADA states that "[t]he defendant has a new crime he's been charged with").

3

And when you go out on parole, you can't step off the curb again. Because after this it's over for you. Okay? (ECF #12-1, pp. 7-8)

The court sentenced petitioner to a determinate term of eight years on the drug charge—which was exactly the custodial term the court warned him he would receive if he did not abide by the court's conditions—along with three years of post-release supervision. On the burglary charge, the court sentenced petitioner to an indeterminate term of 2 to 4 years—which was significantly shorter than the possible 15 years included as part of the court's initial warnings. Exactly as warned, the court also directed that terms be served consecutively.

On his direct appeal to the Second Department, petitioner argued that his sentence was harsh and excessive, and that the trial court's warnings were not sufficiently precise. ECF #14-1 pp. 15-27. The Second Department did not explicitly address either argument but nevertheless vacated the sentence because the enhancement of the supervised-release component (from two to three years) did not comport with the trial court's initial warnings. See People v. Sosa-Rodriguez, 63 A.D.3d 861 (2d Dep't 2009).

The Second Department specifically found that:

> [i]In exchange for his pleas of guilty, [petitioner] was promised that his sentence on the controlled substance conviction would consist of a 2 1/2 -year term of imprisonment plus a two-year period of postrelease supervision, and that if he failed to appear for sentencing, the imprisonment component of the sentence would be increased to eight years, and would run consecutively to the sentence imposed on the burglary conviction. Since, in addition to the promised enhancements, the postrelease supervision component of that sentence was increased from two years to three years, the defendant did not receive the bargained-for sentence.

Sosa-Rodriguez, 63 A.D.3d at 863.

The Second Department directed the trial court, on remand, to:

4

> (1) impose the promised sentences, which, in light of the
> defendant's failure to appear for sentencing, consist of a
> determinate term of imprisonment of eight years, plus a two-year
> period of postrelease supervision on the controlled substance
> conviction, and an indeterminate term of imprisonment of 2 to 4
> years on the burglary conviction, to run consecutively, (2) afford
> the defendant the opportunity to accept the previously-imposed
> sentences, including the enhanced period of postrelease
> supervision, or, (3) in the absence of either of those results, permit
> the defendant to withdraw his pleas of guilty.

Id.

The Court of Appeals denied leave to appeal. People v. Sosa-Rodriguez, 12 N.Y.3d 929 (2009).

At resentencing on October 30, 2009, the court selected the first option, re-imposing the same enhanced custodial terms while reducing the term of post-release supervision from three to two years. ECF#12-2. Sosa-Rodriguez then moved in the Appellate Division for a reduction of sentence in the interests of justice; he did not pursue the ambiguity claim but argued only that the sentence was unduly harsh. ECF #14-1, p. 54, 57-61. The Second Department rejected that application summarily. People v. Sosa-Rodriguez, 78 A.D.3d 1206 (2d Dep't 2010). The order states: "Appeals by the defendant, as limited by his motion, from two resentences of the County Court, Suffolk County (Braslow, J.), both imposed October 30, 2009, on the ground that the resentences were excessive. Ordered that the resentences are affirmed. No opinion." Sosa-Rodriguez, 78 A.D.3d at 1206. Petitioner again sought leave to appeal, which the Court of Appeals denied. People v. Sosa-Rodriguez, 16 N.Y.3d 837 (2011).

## DISCUSSION

Petitioner raises here the same two claims he raised on direct appeal, *i.e.*, that his sentence is harsh and excessive, and that the conditions attached to his negotiated sentence were ambiguous.

These claims do not present a basis for habeas relief.

As a threshold matter, the Court makes clear that both claims were "adjudicated on the merits" in the state court for purposes of triggering the deference required by Antiterrorism and Death Penalty Act of 1996. See 28 U.S.C. §2254(d) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

Although the Appellate Division's decision on petitioner's direct appeal ordered remand to correct the supervised-release component of the sentence, the court necessarily rejected the heart of petitioner's harshness claim because it expressly approved re-imposition of the enhanced custodial terms that he challenges here. (The same court's denial of petitioner's post-resentencing motion for reduction of sentence on harshness grounds serves as a second merits denial of that claim). Likewise, because the Appellate Division's objective in ordering remand was to give full effect to the terms of petitioner's "bargained-for sentence," Sosa-Rodriguez, 63 A.D.3d at 863, its decision is necessarily a

rejection of petitioner's claim that the terms of that bargain were ambiguous. The appellate court's failure to make such reasoning explicit is not relevant for AEDPA purposes. See generally Sellan v. Kuhlman, 261 F.3d 30, 311-14 (2d Cir. 2001); Jimenez v. Walker, 458 F.3d 130, 143 n. 13 (2d Cir. 2006) ("we decided in Sellan that AEDPA deference is no less due to unexplained rulings than to explained rulings"), cert. denied, 549 U.S. 1133 (2007).

The AEDPA standard of review is "highly deferential," Renico v. Lett, 559 U.S. 766, 773 (2010) and "difficult to meet." White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1702 (2014). To obtain relief, petitioner must show that the Appellate Division, in rejecting his claims, either "directly contradict[ed] a holding of a Supreme Court case," Evans. v. Fischer, 712 F.3d 125, 132 (2d Cir. 2013) (internal quotation and citation omitted), cert. denied, 134 S. Ct. 238 (2013), or considerably misapplied an explicitly on-point Supreme Court holding. See White, 134 S. Ct. at 1702 ("as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement") (internal quotations, citations and alterations omitted).

To be sure, because petitioner appears here pro se and has submitted no memorandum of law, it will not suffice for the Court to state merely that *he* has failed to make the necessary identification of an applicable Supreme Court holding. But the Court is confident in stating that no Supreme Court decision of which it is aware was contravened or misapplied by the Second Department when it rejected petitioner's

7

excessiveness and ambiguity claims. Indeed, the sentence that is the subject of his habeas petition does not present a cognizable federal or constitutional issue because it is well within the range authorized by New York law. See, e.g., Green v. Ercole, 2009 WL 5178437, *6 (E.D.N.Y. Dec.31, 2009) ("In the Second Circuit, '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law,'" quoting White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)). The 2-to-4 years imposed for the burglary conviction is below the statutorily authorized maximum penalty of either seven or fifteen years. See N.Y. Penal Law §§ 140.20, 140.25; 70.00(2)(c),(d).[4] Likewise, the term of eight years imposed on the drug conviction is substantially below the statutory maximum of 25 years. See N.Y. Penal Law §§220.39(1), 70.00(2)(b).

---

[4] The Court writes in the disjunctive because of a possible discrepancy in the record that is not material to the disposition announced here. Although the superior court information and the Appellate Division decision on petitioner's first appeal refer to the burglary count as burglary in the *third* degree, neither document includes a citation to the corresponding provision of the New York Penal Law, section 140.20, which defines burglary in the third degree and classifies it as a Class D felony (a category of crime carrying a maximum penalty of seven years). N.Y. Penal Law §70.00(2)(d). The enhanced sentence in the trial court's warnings at the time of the plea, however, was "fifteen years on the burglary"—which suggests that the court may have had second degree burglary in mind, since that crime, a class C felony, carries a fifteen-year maximum penalty. N.Y. Penal Law §§ 140.25, 70.00(2)(c). Indeed, when pronouncing sentence the court referred to burglary in the *second* degree. See ECF #12-1 p. 9 ("Mr. Sosa [R]odriguez, you having previously pled guilty under 1703 of 2005 to Attempted Criminal Sale of a Controlled Substance in the Third Degree and under 2115 of 2005 to Burglary in the Second Degree, [the] sentence of this court on the drug charge, eight years state determinate, five years post-release supervision").

Regardless, the critical fact is that the sentence of 2-4 years that Sosa-Rodriguez received on the burglary count was well below the statutory maximum penalty for class C and class D felonies.

## CONCLUSION

For the reasons discussed, the application for relief under 28 U.S.C. § 2254 is denied in its entirety. Because Sosa-Rodriguez has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
       December 30, 2014

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge